**Jose Luis TAMEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–92–086–CR.**

Court of Appeals of Texas,
Corpus Christi.

Sept. 29, 1993.

---

**7.** *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

Juan L. Villescas, Pharr, for appellant.

Rene Guerra, Dist. and County Atty., Theodore C. Hake, Cynthia A. Morales, Asst. Crim. Dist. Attys., Edinburg, for appellee.

Before SEERDEN, C.J., and KENNEDY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

SEERDEN, Chief Justice.

Appellant was indicted for attempted murder and aggravated assault. He pled "not guilty" and was tried before a jury which found him guilty of attempted voluntary manslaughter. The jury assessed punishment at four years in prison and a fine of $10,000. We affirm.

In his first point of error, appellant contends that the evidence is insufficient to support the conviction. Specifically, he claims the evidence fails to show that he intended to murder the victim or that he was acting under the immediate influence of sudden passion arising from an adequate cause.

The facts show that Viterbo Hernandez, the victim, lived with appellant at a house in Alamo, Texas. The house belonged to appellant's mother. Hernandez and appellant had been friends for about twenty-five years, most of their lives. On the evening of the offense, Hernandez and appellant had both been drinking alcohol and both may have been intoxicated. When Hernandez came home, he complained about another person, Eulalio Guzman, staying at the house. Although Guzman had been at the house several weeks at Hernandez's invitation, Hernandez believed it was appellant's responsibility to tell Guzman to get out of his room. According to Hernandez, during their discussion, appellant poked him in the chest with his finger. In response, Hernandez took appellant's arm and twisted it behind him. Hernandez also put his forearm on appellant's chin and told him to go tell Guzman to get out of his room. Appellant said, "Okay, I give up," and Hernandez let him go, thinking appellant was going to talk to Guzman. Less than fifteen seconds later, appellant returned. According to Hernandez, appellant, who was hiding his hand behind him, lunged at Hernandez and stabbed him about two inches below his left nipple.

Appellant testified in his own defense. He confirmed that he and Hernandez had an argument concerning Guzman. According to appellant, Hernandez grabbed him, pinned him to the wall, and started putting pressure on his neck. Appellant tried to push Hernandez away but could not. Appellant started to see stars, and he believed Hernandez was going to kill him, so he reached into his pocket and used his pocket knife to stab Hernandez. Appellant claimed his intent was not to kill Hernandez, just to make him stop. Appellant admitted that he became upset with Hernandez when Hernandez started pushing him around. Appellant also admitted that his knife was capable of causing death or serious bodily injury.

Dr. John Orfanos testified that he performed a "life saving operation" on Hernandez as a result of the stab wound.

■ Appellant argues that there is no evidence that he intended to commit the offense of murder. We will review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 309, 99 S.Ct. 2781, 2783, 61 L.Ed.2d 560 (1979); *Baugh v. State*, 776 S.W.2d 583, 585 (Tex.Crim.App.1989). Viewed most favorably to the verdict, the evidence shows that Hernandez argued with appellant, held him or twisted his arm, but then let him go. Shortly thereafter, appellant returned and stabbed Hernandez in the chest. A jury may find a specific intent to kill from circumstances accompanying the use of a weapon. *Cordova v. State*, 698 S.W.2d 107, 112 (Tex. Crim.App.1985). The circumstances show that appellant departed the confrontation, returned, and stabbed Hernandez in the left side of the chest. A rational jury could have found that appellant intended to kill Hernandez.

■ Appellant also argues that there is no evidence that he was acting under the immediate influence of sudden passion arising

from an adequate cause. We do not reach the merits of this complaint. Appellant did not object to having the jury instructed on the lesser included offense of attempted voluntary manslaughter. As appellant did not object and received the benefit of having the jury charged on this issue, he cannot complain that the evidence fails to establish "sudden passion arising from an adequate cause." *Lee v. State,* 818 S.W.2d 778, 781 (Tex.Crim. App.1991); *Bradley v. State,* 688 S.W.2d 847, 853 (Tex.Crim.App.1985); *Vann v. State,* 853 S.W.2d 243 (Tex.App.—Corpus Christi 1993, pet. ref'd). Appellant's first point of error is overruled.

In point two, appellant contends that the trial court failed to instruct the jury on the full range of punishment for a third degree felony. Texas Penal Code section 12.34 provides:

> (a) An individual adjudged guilty of a felony of the third degree shall be punished by:
>
> (1) confinement in the institutional division of the Texas Department of Criminal Justice for any term of not more than 10 years or less than 2 years; or
>
> (2) confinement in a community correctional facility for any term of not more than 1 year.
>
> (b) In addition to imprisonment, an individual adjudged guilty of a felony of the third degree may be punished by a fine not to exceed $10,000.

Tex.Penal Code Ann. § 12.34(a)(1) (Vernon Supp.1993).

The trial court failed to instruct the jury about the community correctional facility punishment option, section 12.34(a)(2). Appellant did not object to the punishment charge but now asserts that he has been denied due process and due course of law. The State acknowledges that the trial court erred by not submitting the community correctional facility punishment option. *See Coody v. State,* 812 S.W.2d 631, 634 (Tex. App.—Houston [14th Dist.] 1991), *remanded on other grounds,* 818 S.W.2d 68 (Tex.Crim. App.1991), *on remand,* 841 S.W.2d 30 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd). In *Coody,* the Houston Court of Appeals determined that the defendant suffered egregious harm when the community correctional facility option was not included in the charge. The Court reasoned that the defendant was denied the opportunity to receive a sentence less harsh than the minimum the jury was instructed to impose. *Coody,* 812 S.W.2d at 635.

■ As appellant did not object to the punishment charge, error will only cause reversal if he suffered egregious harm. *Cartwright v. State,* 833 S.W.2d 134, 137 (Tex. Crim.App.1992); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985); *Coody,* 812 S.W.2d at 634.

■ Except for *Coody,* we have found no case law addressing the harm attendant to the trial court's failure to instruct on the community correctional facility punishment option. Recently, however, in *Williams v. State,* 851 S.W.2d 282, 287 (Tex.Crim.App. 1993), the Court addressed the issue of harm flowing from the trial court's failure to instruct the jury on the proper punishment range in an aggravated kidnapping case. In *Williams,* the trial court instructed the jury that aggravated kidnapping was a first degree felony but failed to instruct that the crime could also be a second degree felony under certain conditions. *Id.* The Court of Criminal Appeals, undertaking an *Almanza* analysis, found that the defendant did not suffer egregious harm, even though the jury was not instructed on the lesser punishment option. *Id.* The Court explicitly refused to create a *per se* rule that a defendant suffers egregious harm when the trial judge fails to instruct on the lesser punishment. *Id.* Although the present case differs from *Williams* in the manner by which the lesser punishment option was omitted from the jury's consideration, the error in both cases is the same: the trial court failed to instruct on a lesser punishment option. In light of *Williams,* we do not consider *Coody* persuasive authority. We will apply the *Almanza* analysis keeping the *Williams* holding in mind.

At punishment, the State reoffered its evidence from the guilt phase and offered evidence that appellant's reputation was bad. Appellant called only one witness, his father,

who testified that appellant had never been convicted of a felony. Appellant's counsel argued for probation. He did not suggest a certain number of years but left it to the jury to decide the punishment and the probationary term. The prosecutor argued for the maximum punishment and against probation. The jury returned a four-year sentence, without probation. We need not restate the evidence introduced at the guilt phase, much of which is set forth under point of error one, but we consider these facts in assessing harm.

In this case, we do not find egregious harm. Appellant nearly killed his roommate by stabbing him in the chest. The jury rejected appellant's self-defense claims, and appellant testified at trial that he knew his knife was capable of causing death or serious bodily injury. After finding appellant guilty, the jury assessed punishment at four years, without probation. We find it highly unlikely that the jury's consideration of punishment would have been affected by the inclusion of the community correctional facility punishment option, the maximum punishment being one year's confinement. By its verdict, the jury showed that it was not considering the minimum punishment range. Thus, we do not find that appellant has shown actual egregious harm.

Furthermore, we note that the appellant's failure to object to the charge could have been a strategic punishment decision. As noted above, appellant pleaded for probation, which the State opposed. Competent counsel, weighing the facts of the case, may have believed that a jury would be more likely to assess a non-probated one-year community correctional facility punishment rather than a lengthier sentence with probation. With the goal of keeping his client out of jail, counsel may have believed that omitting the community correctional facility option was beneficial to his client.

Considering the evidence, the contested issues at trial, the jury's actual punishment verdict, and possible trial strategy, we conclude that appellant did not suffer egregious harm from the charging error. Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.